**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIANA DACORTA, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br><br>    v.<br><br>AM Retail Group, Inc. d/b/a G.H. Bass & Co.,<br><br>                     Defendant. | Civil Action No. 7:16-cv-01748 (NSR) |

**MEMORANDUM IN SUPPORT OF AM RETAIL GROUP INC.'S**
**<u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(g)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................3

    A.    Pre-Motion Proceedings...............................................................................3

    B.    What the Amended Complaint Alleges .........................................................4

        1.    Allegations regarding Bass Pricing Practices ...............................4

        2.    Allegations Concerning DaCorta's Purchase of Quincy Boots.................4

    C.    What the Complaint Does Not Allege ..........................................................5

    D.    Plaintiff Did, In Fact, "Pay Less" For Her Quincy Boots-- *Far Less* ......................7

III.    PLEADING STANDARDS....................................................................................8

    A.    Federal Rule of Civil Procedure 12(b)(1) ...................................................8

    B.    Federal Rule of Civil Procedure 12(b)(6) ...................................................8

IV.    ARGUMENT .........................................................................................................9

    A.    Dismissal Pursuant to Rule 12(b)(1):  Plaintiff has Sustained No Injury Fairly Traceable to AMRG .........................................................................9

        1.    Rule 12(b)(1) Requires Dismissal Where the Pleadings or Evidence Demonstrate that the Court Lacks Subject Matter Jurisdiction ...............................................................................9

        2.    Extrinsic Evidence Demonstrates that Plaintiff Lacks Standing .............10

        3.    Plaintiff Fails to Show that her Alleged Injuries Could Be Redressed by a Favorable Decision as to Injunctive Relief......................10

    B.    Dismissal Pursuant to Rule 12(b)(6):  Plaintiff Lacks Statutory Standing Under NY GBL §§349/350...................................................................13

        1.    Plaintiff's Claim that She Would Not Have Purchased the Boots "But For" the Alleged Deception is not Cognizable under NY GBL §§ 349/350 .......................................................................13

        2.    Plaintiff's Claim that She Would Have Paid Less for the Boots "But For" the Alleged Deception is not Cognizable under NY GBL §§ 349/350 .......................................................................15

        3.    Plaintiff has not Adequately Alleged that AMRG Charged a "Price Premium" for the Boots .........................................................16

V.    CONCLUSION....................................................................................................19

i

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page**</u>

<u>**CASES**</u>

*Albert v. Blue Diamond Growers*
  151 F. Supp. 3d 412 (S.D.N.Y. 2015) ......................................................................11

*Arcand v. Brother Int'l Corp.*
  673 F.Supp.2d 282 (D.N.J. 2009) .............................................................................17

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................... 8, 9

*Atik v. Welch Foods, Inc., et al.*
  No. 15-cv-5405(MKB)(VMS), 2016 WL 5678474 (E.D.N.Y., Sept. 30, 2016) .......... 11, 12

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................................................8

*Bell v. McRoberts Protective Agency*
  No. 15-cv-0963, 2016 WL 1688786 (S.D.N.Y. Apr. 25, 2016)...................................9

*Branca v. Nordstrom, Inc.*
  No. 14CV2062-MMA JMA, 2015 WL 1841231 (S.D. Cal. Mar. 20, 2015) .................6

*Brandt v. CremaLita Mgmt.*
  2006 N.Y. Misc. LEXIS 4101 (Sup. Ct. N.Y. Cty., June 9, 2006)...........................15

*Camasta v. Jos. A. Banks Clothiers, Inc.*
  761 F.3d 732 (7th Cir. 2014) ............................................................................ 16, 17

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983)....................................................................................................11

*City of New York v. Smokes-Spirits.Com, Inc.*
  12 N.Y.3d 616 (2009) ...............................................................................................13

*Elkind v. Revlon Consumer Products Corp.,*
  *No. 14-cv-2484),* 2015 WL 2344134 (E.D.N.Y. May 14, 2015) ...........................12

*Gomez-Jiminez v. New York Law School*
  943 N.Y.S.2d 834 (N.Y. Sup. Ct. NY Cnty. 2012).................................................16

*Gristede's Foods, Inc. v. Unkechaunge Nation*
  532 F. Supp. 2d 439 (E.D.N.Y. 2007) .....................................................................13

*Heckman v. Town of Hempstead*
  568 F. App'x 41 (2d Cir. 2014).................................................................................9

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*
   No. 13-CV-150, 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) ............................................ 11

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*
   929 A.2d 1076 (N.J. 2007) ....................................................................................................... 18

*Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010) ..................................................................... 17

*Lieberson v. Johnson & Johnson Consumer Cos.*
   865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................................................... 17

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) .................................................................................................................. 10

*Marakova v. United States*
   201 F.3d 110 (2d Cir. 2000) ...................................................................................................... 8

*Marcavage v. City of New York*
   689 F.3d 98 (2d Cir. 2012) ....................................................................................................... 11

*McCormick v. School Dist. of Mamaroneck*
   370 F.3d 275 (2d Cir . 2004) .................................................................................................... 11

*Mirkin v. Wasserman*
   5 Cal. 4th 1082 (1993) ............................................................................................................... 19

*Mulder v. Kohl's Department Stores, Inc.*
   No. 15-11377-FDS, 2016 WL 393215 (D. Mass., Feb. 1, 2016) .......................................... 17

*Nicosia v. Amazon.com, Inc.*
   --- F.3d at ---, 2016 WL 4473225 (2d Cir., Aug. 25, 2016) .................................................... 11

*Oliveira v. Amoco Oil Co.*
   201 Ill. 2d 134, 776 N.E.2d 151, 164 (2002) .......................................................................... 18

*Preira v. Bancorp Bank*
   885 F. Supp. 2d 672 (S.D.N.Y. 2012) ..................................................................................... 14

*Pungitore v. Barbera*
   506 F. App'x at 42 (2d Cir.  2012) ........................................................................................... 11

*Rubenstein v. Neiman Marcus Grp. LLC*
   No. CV 14-07155 SJO JPRX, 2015 WL 1841254 (C.D. Cal. Mar. 2, 2015) ........................ 6

*Securities Investor Protection Corporation v. A.R. Baron & Co.*
   222 F.3d 63 (2d Cir. 2000) ........................................................................................................ 18

*Shain v. Ellison*
   356 F.3d 211 (2d Cir. 2004) ..................................................................................................... 11

*Shaulis v. Nordstrom Inc.*
   120 F. Supp. 3d 40 (D. Mass. 2015) ....................................................................................... 17

*Small v. Lorillard Tobacco Co.*
    720 N.E.2d 892 (N.Y. 1999)........................................................................13, 14, 15

*State Employees' Bargaining Agency Coalition v. Rowland*
    494 F.3d 71 (2d Cir. 2007).......................................................................................9

*Tasini v. New York Times Co., Inc.*
    184 F. Supp. 2d 350 (S.D.N.Y. 2002) .....................................................................9

*Tomasino v. Estee Lauder Cos. Inc.*
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) .....................................................................12

*Waldron v. Jos. A. Bank Clothiers, Inc.*
    No. 12-cv-02060 (D. N.J., Jan. 28, 2013).............................................................18

## STATUTES

Federal Rule of Civil Procedure
    §12(b)(1) .................................................................................................. 1, 3, 8, 9
    §12(b)(6) .................................................................................................. 1, 8, 9, 13
    §12(g) ............................................................................................................... 1

## OTHER AUTHORITIES

http://www.miriam-webster.com/dictionary/value ........................................................ 6

New York General Business Law
    §§349/350 ................................................................................. 2, 13, 14 16
    §349(h).............................................................................................................. 13
    §350.................................................................................................................. 13
    §350-e(3)...........................................................................................................13

Defendant AM Retail Group, Inc. d/b/a G.H. Bass & Co. (hereinafter "AMRG," "Bass" or "Defendant") respectfully moves, in accordance with Federal Rule of Civil Procedure ("FCRP" or "Rule") 12(g), for dismissal of  Plaintiff Diana DaCorta's Amended Class Action Complaint [Dkt. No. 20] (the "Amended Complaint" or "AC"),  pursuant to FRCP 12(b)(1) and 12(b)(6), and in support of that motion, states as follows:

## I.    **INTRODUCTION**

In a case where Plaintiff claims to have paid too much for a pair of stylish "Quincy" boots, Plaintiff has pled absolutely no facts to demonstrate that she has sustained economic harm. In fact, Bass's records prove that Plaintiff *actually paid about 60% less* than she has alleged. Plaintiff's allegations of overpayment lack plausible support, and Plaintiff lacks standing to pursue this action.

This case resembles other "deceptive pricing" suits that have been filed against retailers across the country, many of which have been dismissed at the pleadings stage.  Plaintiff contends that she was injured by allegedly false discount pricing at a Bass "factory outlet" store.  She specifically objects to the fact that some of Bass's pricing displays list a higher reference price next to the price at which the merchandise was offered for sale (the "Offering Price"). This higher reference price (the "Strike-Through" price) is struck through with a line, which Plaintiff claims is an affirmative representation that the item previously sold at that higher price.[1]

---

[1] Plaintiff offers the following example of the allegedly misleading pricing practice at paragraph 15 of the Amended Complaint.  She has pulled this graphic from Bass's website, even though she does not claim to have visited Bass's website, and the depiction she offers notably does not use the word "sale."

Plaintiff alleges that the merchandise at issue – a pair of "Quincy" style boots – was never previously sold at its $180 Strike-Through price, and that she was therefore injured as a result of her purchase. She complains that she either would not have purchased the Quincy boots, or would have paid less for the boots had she known of AMRG's allegedly deceptive pricing practice. She seeks to represent a class consisting of all purchasers within the state of New York, and seeks actual and/or statutory damages under New York General Business Law ("NY GBL") §§349/350.

Plaintiff's threadbare allegations fail to identify any cognizable injury, either under Article III or NY GBL §§349/350. Plaintiff has <u>not</u> alleged any facts to show that her Quincy boots were not "worth" the amount that she paid for them. And even if Plaintiff had alleged that the shoes were sold exclusively by Bass outlets—which she does not—she has not alleged any facts to suggest that they were different from or inferior in any way to those sold at department stores, or on Bass's "full priced" website, or that they were of poorer quality, damaged, or defective in any way. Plaintiff received an item of value commensurate with the money she paid.

---



ALESSANDRA RIDING BOOT
FACTORY OUTLET
$150.00  $34.99

Moreover, she has not reproduced any graphic relating to the style of boots she purchased. In fact, she has deleted a photograph in her original complaint which purported to show the in-store signage that allegedly duped her [*Compare* Dkt. No. 1, ¶21 with Dkt. No. 20].

But DaCorta also lacks constitutional standing for a very simple reason: the injury allegations of the First Amended Complaint are not true. AMRG has brought an evidence-based motion under Rule 12(b)(1), which establishes that Plaintiff has predicated her action on a mistaken belief that she paid approximately $44.99 for her boots. In actuality, however, Plaintiff paid barely twenty one dollars. The Declaration of AMRG employee Scott Christian, and supporting business records, demonstrate that <u>Plaintiff spent a mere $21.20 – roughly 40% of what she claims to have paid.</u> Moreover, to the extent that Plaintiff seeks injunctive relief, she apparently now believes that Bass's pricing is deceptive, and therefore will know to avoid the store in the future. On this record, Plaintiff cannot meet her burden to show any injury in fact, or that she has, or will in the future, suffer any harm fairly traceable to AMRG's conduct.

## II.    <u>FACTUAL BACKGROUND</u>

### A.    <u>Pre-Motion Proceedings</u>

In its pre-motion letter to the Court [Dkt. No. 14], AMRG highlighted several pleading deficiencies in Plaintiff's Original Complaint [Dkt. No. 1], including: (1) the Complaint failed to allege what Plaintiff actually paid for the Quincy boots; (2) it pled no facts to support her claim that Bass's "Strike-Through" prices affirmatively represent former prices; and (3) it failed to articulate a cognizable injury. After hearing argument on August 3, 2016, the Court permitted AMRG to pursue its motion to dismiss. It also gave Plaintiff the option of standing on her original Complaint, or amending to attempt to address the cited deficiencies. [Dkt. No. 18]. Plaintiff elected the latter, and on September 7, 2016 filed this AC. [Dkt. No. 20]. For the same reasons articulated in AMRG' s original pre-motion letter, the AC continues to fail to state a claim; additionally, Plaintiff lacks Article III standing. AMRG has therefore proceeded with this motion.

B.    **What the Amended Complaint Alleges**

1.    **Allegations regarding Bass Pricing Practices**

Plaintiff's central contention is that the alleged manner of pricing at Bass factory outlet stores—namely, the practice of marking merchandise with an Offering Price, coupled with a higher Strike-Through price—is unfair and deceptive.  AC ¶1.  Plaintiff alternates between arguing that listing a Strike-Through price next to a lower Offering Price conveys that the Strike-Through price is a "former," "original," or "comparison" price.  *See, e.g.,* AC ¶¶3, 14-15, 20-21. Plaintiff further contends that a majority of goods manufactured for Bass factory outlet stores are sold exclusively by Bass outlets, and are of "lesser quality" than the Bass-branded goods that are sold at stores like Macy's and Nordstrom.  AC ¶2.  Plaintiff claims that a perceived discount based on the Strike-Through price induced her to make her purchase, and that absent the Strike-Through price, she either would not made her purchase, or would not have paid as much.  AC ¶4.

2.    **Allegations Concerning DaCorta's Purchase of Quincy Boots**

Plaintiff alleges that on or about October 13, 2015, she purchased two items from the Bass Factory Outlet in Fishkill, New York: a pair of "Quincy" boots and a pair of "Zee" boots. AC ¶¶21, 24.  Plaintiff bases her claims of deceptive pricing in this case on the Quincy boots only.

With regard to the Quincy boots, Plaintiff alleges that the boots were "displayed with a placard identifying a price of $180.00 with a 'sale' price of $44.99, creating the impression of an approximately 75% discount."  AC ¶21.  That is, Plaintiff claims that she interpreted the pricing to mean that the boots were sold elsewhere for the $180 reference price, and bought the boots based on this interpretation.  It is not clear whether her quotation marks around the word "sale" indicate that this word actually appeared on the in-store signage, or whether they instead reflect *her* interpretation of what the offering price meant (*i.e.,* that she understood that this was a sale

4

price in accordance with the definition of "sale" she has quoted at Par. 22). She alleges that the boots were never actually sold for $180, and that she "would not have purchased the Quincy boots, or would not have paid the amount she did, if not for" the allegedly deceptive reference price. AC ¶¶ 20, 25. She also suggests, in passing, that Bass charges a "premium" for the boots because it "created the impression that the factory store merchandise is [of] similar quality" as the Bass merchandise sold at department stores. AC ¶13.

With regard to the Zee boots, Plaintiff states that she paid a total of $80.97 for both pairs of boots combined (AC ¶24), but does not contend that AMRG deceived her into buying Zee boots.[2] The Amended Complaint thus rests entirely on her allegations concerning the Quincy boots.

### C.    What the Complaint Does Not Allege

The Amended Complaint alleges no facts to support Plaintiff's contention that Bass outlet merchandise is not sold by other retailers, or is of "lesser quality" than the Bass-branded merchandise sold at department stores like Macy's and Nordstrom. Indeed, she does not allege that she ever even shopped for Bass shoes at any other location, or has ever seen Bass shoes in a store like Macy's or Nordstrom. She points to nothing in her own experience with Bass shoes, or retail shopping in general, to support the alleged deception described in paragraphs 1-4. Indeed, if her experiences with Bass or retail shopping colored her interpretation of the Quincy boots, their quality, or their pricing, the AC leaves those experiences a mystery.

As to DaCorta's own purchase, Plaintiff does not allege any facts to show that the Quincy boots were among the purported "majority" of Bass products supposedly manufactured solely for outlet sale. She does not allege that they contain inferior materials, were manufactured in an

---

[2] Plaintiff is asking the Court to "do the math," implying, while not stating outright, that the difference between the ultimate transaction price ($80.97) and the cost of the Quincy boots ($44.99) would yield the amount paid for the Zee boots.

inferior manner, or were damaged or defective in any way.  The AC does not point to any facts to show that boots of quality comparable to the Quincy do not, in fact, command prices up to $180.  Plaintiff does not contend that the boots have failed to satisfy her expectations in terms of how they look, fit, feel or how well they have lasted in all this time that she has owned them.

The AC similarly pleads no facts to support Plaintiff's assumption that the Strike-Through price next to the Offering price reflects an "original" or "former" price. With respect to the online illustration she has reproduced at Paragraph 15, a reasonable consumer, looking at the Strike-Through price, could easily interpret it as a value comparison (*i.e.*, a judgment, estimate or appraisal of the amount of money that something is worth).[3]  *See* http://www.miriam-webster.com/dictionary/value. As stated above, it is not clear from the AC whether the word "sale" appeared on the in-store signage Plaintiff purportedly saw.

On several occasions, Plaintiff cites to information on the Bass website, but never claims to have visited the website.

Plaintiff fails to allege with clarity what she actually paid for the Quincy boots, stating only that they were marked with a "sale" price of $44.99.  She has not appended any documentation, such as a receipt, to corroborate her payment of this sum, but in her pre-motion submission and at the pre-motion argument, her counsel committed that this was the amount she paid.  [*See* Dkt. No. 15, at p. 1 ("Clearly, this allegation…is sufficient to allege that Plaintiff actually purchased the boots for $44.99."); Pre-Motion Conference Transcript, 5:25-6:19 ("With

---

[3] Other courts have held that allegedly deceptive reference prices would be interpreted as comparable value comparisons, and are not deceptive to reasonable consumers. *See Rubenstein v. Neiman Marcus Grp. LLC*, No. CV 14-07155 SJO JPRX, 2015 WL 1841254, at *6 (C.D. Cal. Mar. 2, 2015)("the price tags, with their 'Compared To' language, would most likely be interpreted by a reasonable consumer as a comparable value comparison."); *Branca v. Nordstrom, Inc.*, No. 14CV2062-MMA JMA, 2015 WL 1841231, at *8 (S.D. Cal. Mar. 20, 2015) (same).

regard to the price that [Plaintiff] is alleged to have paid, we thought the complaint was in fact clear that she did in fact pay 44.99 for the product… I think the complaint is fairly clear that that is what the allegation is.")

> **D.    Plaintiff Did, In Fact, "Pay Less" For Her Quincy Boots-- *Far Less***

AMRG's business records unequivocally demonstrate that Plaintiff paid nowhere near the $44.99 she claims to have paid for her Quincy boots. Scott Christian, AMRG's Director of IT Strategy and Process, confirms that Plaintiff spent $80.97 at the Fishkill, NY Bass Outlet Store on October 10, 2015.[4] (*See* Christian Declaration, at ¶3 and Exhibit A thereto). This $80.97 purchase did not, however, consist solely of the Quincy and Zee boots, as Plaintiff claims (AC ¶24). Rather, it also included the purchase of an "Owl" scarf with an Offering price of $16.99— an item that Plaintiff omits from her Amended Complaint. (*See Id.* at ¶6, and Exhibit B-2 thereto.) Plaintiff also does not mention in her AC that she bought the Quincy boots for 50% off, thanks to a "Buy-One, Get-One at 50%" or "BOGO-50" promotion. (*See Id.* at ¶7, and Exhibit 5-4 thereto.) Finally, rather than the $15.00 off coupon that Plaintiff alleges using, she actually received *an additional 15% off her entire purchase*. (*See Id.* at ¶¶5-7, and Exhibit B-1, B-2, and B-8 thereto.)    Below is a summary what Plaintiff actually paid for her Quincy Boots and the other items:

| ITEM | Offering Price | BOGO-50 discount | Extra 15% off entire purchase | Total Price (Pre-Tax) |
|---|---|---|---|---|
| Quincy boots | $49.88[5] | ($24.94) | ($3.74) | $21.20 |

[4] Per AMRG's business records, Plaintiff actually made her Bass Factory Outlet purchase on October 10, 2015 (a Saturday), not October 13, 2015 (a Tuesday) as alleged. AMRG's business records show that no Quincy boots were sold in the Fishkill, NY store on October 13, 2015. (*See* Christian Declaration at ¶3, fn. 1.)

[5] Per AMRG's business records, on October 10, 2015, the Offering Price of the Quincy boots was ***$49.88***, not $44.99 as Plaintiff alleges. This certainly calls into question whether Plaintiff

| Zee boots | $49.88 | n/a | ($7.48) | $42.40 |
| Owl scarf | $16.99 | n/a | ($2.55) | $14.44 |
| | | | | **$78.04**<br>($80.97 with tax) |

*Id*. at ¶ 7.

Thus, with regard to the Quincy boot—the only item of relevance to the claims of the AC—*Plaintiff paid nearly 60% less than what she claims to have paid*.  Indeed, if her goal in shopping was to get a big discount off of a ticketed price, **she got exactly that**.

III.    **PLEADING STANDARDS**

    A.    **Federal Rule of Civil Procedure 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the District Court lacks the statutory or constitutional power to adjudicate it."  *Marakova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  On a motion to dismiss under Rule 12(b)(1), a court may refer to evidence outside the pleadings.  *Id.*  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exits."  *Id.*

    B.    **Federal Rule of Civil Procedure 12(b)(6)**

On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Indeed, a claim is only facially plausible when its actual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level…"  *Twombly*, 550 U.S. at 555-56.  "Threadbare recitals of the elements of a

---

ever saw the in-store signage depicted at paragraph 21 of her Complaint (showing the words "clearance" and "sale"), but which she has now deleted from her AC.

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678.

When considering a Rule 12(b)(6) motion, a court may "consider facts alleged in the complaint and documents attached to it or incorporated by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Bell v. McRoberts Protective Agency*, No. 15-cv-0963, 2016 WL 1688786, at *1 (S.D.N.Y. Apr. 25, 2016) (Oetken, J) (quoting *Heckman v. Town of Hempstead,* 568 F. App'x 41, 43 (2d Cir. 2014)).

## IV.    ARGUMENT

### A.    Dismissal Pursuant to Rule 12(b)(1): Plaintiff has Sustained No Injury Fairly Traceable to AMRG

#### 1.    Rule 12(b)(1) Requires Dismissal Where the Pleadings or Evidence Demonstrate that the Court Lacks Subject Matter Jurisdiction

A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *Tasini v. New York Times Co., Inc.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002). Facial attacks challenge the sufficiency of the Complaint's allegations, so a court adjudicating a facial attack must accept those allegations as true. *Id.* By contrast, factual attacks "challenge whether sufficient facts exist for the court to determine that it has jurisdiction to hear the plaintiff's claim." *Id.* (internal citations and quotations omitted). In a factual attack, the court is not limited to the face of the complaint, and may consider evidence outside of the pleadings to resolve disputed factual issues. *State Employees' Bargaining Agency Coalition v. Rowland,* 494 F.3d 71, 77, n. 4 (2d Cir. 2007).

In the present motion, AMRG asserts a factual challenge to Plaintiff's Article III standing to pursue any claim, and a facial challenge to her request for injunctive relief.

### 2.    Extrinsic Evidence Demonstrates that Plaintiff Lacks Standing

Plaintiff does not have standing under Article III.  Plaintiff's claim rests entirely on an allegation that she paid too much for her boots, but the evidence establishes that Plaintiff did not pay too much, but rather got a whopping discount.  She got a great pair of boots for barely over $20—roughly 60% less than what she claims to have paid.  Thus, when she claims that she "would not have paid as much" for the boots as she did--- she did, in fact, pay less.

In order to satisfy the Constitution's standing requirements, Plaintiff must establish three things:

> **First [she must have] suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of**. . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added).

As shown above, Plaintiff purports to have paid $44.99 for the Quincy boots, but AMRG's business records prove she paid only $21.20.  Having actually paid less than half of what she purports to have paid for the boots, it is evident that Plaintiff has suffered no actual economic harm.  And, when she pleads that she would have paid less than $44.99 for the Quincy boots, in reality, her wish came true.  Moreover, the substantial discount she received off of the posted sale price also severs any purported causal link between the "Strike Through" price and Plaintiff's purchase.  If her goal was to get a big discount off of a ticketed price, she got exactly that.

### 3.    Plaintiff Fails to Show that her Alleged Injuries Could Be Redressed by a Favorable Decision as to Injunctive Relief

Additionally, the face of the Amended Complaint shows that Plaintiff lacks standing to seek injunctive relief, because she is no longer at risk of being deceived by the allegedly

deceptive pricing practice.  When seeking prospective injunctive relief, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [s]he ... will be injured in the future."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *see also Nicosia v. Amazon.com, Inc.,*  --- F.3d at ---, 2016 WL 4473225, at *12 (2d Cir., Aug. 25, 2016) (stating that past injuries do not confer standing to seek injunctive relief); *Pungitore v. Barbera*, 506 F. App'x at 42 (2d Cir.  2012) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm.").  "In establishing a certainly impending future injury, ... the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (collecting cases). That is, Plaintiff herself must demonstrate a "likelihood of future harm," also described as a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also McCormick v. School Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir . 2004) (internal citations and quotations omitted)("[A] plaintiff seeking injunctive or declaratory relief cannot rely on past injury…but must show a likelihood that he or she will be injured in the future.")

District Courts within the Second Circuit have consistently held that there is no standing to seek injunctive relief in a false advertising case where the plaintiff is no longer at risk of being deceived by the alleged misrepresentation.  *See, e.g., Atik v. Welch Foods, Inc., et al.*, No. 15-cv-5405(MKB)(VMS), 2016 WL 5678474, at *4-*6 (E.D.N.Y., Sept. 30, 2016), citing, *inter alia*, *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, No. 13-CV-150, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015)

(finding that because the plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"), *appeal withdrawn* (Nov. 10, 2015); *Elkind v. Revlon Consumer Products Corp.,* No. 14-cv-2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015)(holding that the plaintiffs did not have standing to seek injunctive relief because they were "aware of the alleged misrepresentations that they challenge[d], so there [wa]s no danger that they will again be deceived by them"); *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (holding that the plaintiffs did not have standing to seek injunctive relief because the plaintiffs alleged that the products at issue had been deceptively advertised and that they would not have bought the products "absent the allegedly misleading advertisements").

The *Atik* Court recently explained that in all of these cases, the courts concluded that "because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm."  *Atik*, 2016 WL at *5.  And following this line of cases, the *Atik* Court held that "[b]ecause Plaintiffs have failed to allege a risk of future injury, the Court … finds that Plaintiffs lack standing to seek injunctive relief."  *Id*. at *6.

Likewise, in the present case, Plaintiff alleges that she now believes that Bass outlet merchandise is made exclusively for Bass factory outlet stores, and that the higher reference price is not actually the item's "original" or "former" price.  She does not claim that she will shop at Bass factory outlet stores in the future—to the contrary, she claims that she either would not have purchased the Quincy boots, or would not have paid the price she did, but for AMRG's allegedly deceptive reference price.  AC ¶20.  Plaintiff is thus not at risk of being deceived by AMRG's alleged conduct, and lacks standing to seek injunctive relief.

**B.      Dismissal Pursuant to Rule 12(b)(6):  Plaintiff Lacks Statutory Standing Under NY GBL §§349/350**

Plaintiff's claims under NY GBL §§349/350 require allegations of actual and cognizable damages, which Plaintiff has not pleaded, providing yet another basis for dismissal.

In order to state a *prima facie* case under NY GBL §§349/350, a plaintiff must allege facts showing that she has suffered a cognizable injury.  GBL §§349(h), 350-e(3); *see also City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621-22 (2009) (GBL §349) and *Gristede's Foods, Inc. v. Unkechaunge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (standards under §349 and §350 are substantively identical).

In this case, Plaintiff attempts to articulate three separate theories of injury: (1) she would not have purchased the Quincy boot "but for" the alleged deception; (2) she would not have paid the Offering price for the Quincy boots "but for" the alleged deception; and (3) she paid a "premium" for the Quincy boots because of the alleged deception.  None of Plaintiff's allegations are sufficient to state a cognizable injury under NY GBL §§349/350.

**1.      Plaintiff's Claim that She Would Not Have Purchased the Boots "But For" the Alleged Deception is not Cognizable under NY GBL §§ 349/350**

First, it is well-settled under New York law that a plaintiff does not allege a legally cognizable injury simply by claiming that he would not have bought an item "but for" the alleged deception.  *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) (dismissing claim under NY GBL §349 that plaintiffs were injured by tobacco manufacturers' deceptive advertising where the sole injury—"that defendants' deception prevented them from making free and informed choices as consumers"—did not constitute actual harm under the statute).

In *Small*, the New York Court of Appeals upheld dismissal of GBL §349/§350 claims for failure to plead actual injury.  Plaintiffs in *Small* alleged that the defendants' deceptive practices

prevented the plaintiffs from making "free and informed choices as consumers[,]" and that

consumers "who buy a product that they would not have purchased, absent a manufacturer's

deceptive commercial practices, have suffered an injury." Plaintiffs sought recoupment of the

purchase price. 94 N.Y.2d at 51, 56.  Rejecting this theory, the Court of Appeals held:

> Plaintiffs' definition of injury is legally flawed. Their theory
> contains no manifestation of either pecuniary or "actual" harm;
> plaintiffs do not allege that the cost of cigarettes was affected by
> the alleged misrepresentation, nor do they seek recovery for injury
> to their health as a result of their ensuing addiction. Indeed, they
> chose expressly to confine the relief sought solely to monetary
> recoupment of the purchase price of the cigarettes. Plaintiffs' cause
> of action . . . thus sets forth deception as both act and injury.

*Small,* 94 N.Y.2d at 56 (emphasis added).  In other words, under *Small,* to plead the requisite

injury, a plaintiff must assert harm independent of the claimed deception.  Otherwise, the

complaint merely "sets forth deception as both act and injury" and fails to assert any independent

harm; there can be no "purchase price" injury if the plaintiff received a good with a value equal

to or greater than what he paid for it.  *See id.* at 56-57.  *See also Preira v. Bancorp Bank*, 885 F.

Supp. 2d 672, 679 (S.D.N.Y. 2012) (citing *Small,* holding "[T]he New York Court of Appeals

has expressly rejected [the argument] 'that consumers who buy a product that they would not

have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury

under NY GBL §349.'").

    To the extent that Plaintiff contends that she would not have purchased the Quincy boots

save for the allegedly deceptive pricing practice, her claim fails as a matter of law.

>    2.    **Plaintiff's Claim that She Would Have Paid Less for the Boots "But For" the Alleged Deception is not Cognizable under NY GBL §§ 349/350**

Plaintiff's second theory of cognizable injury—that she would not have spent as much for the boots—fares no better, as this is nothing more than a variation on the theme that she would not have purchased the boots at all.  An allegation of this variety can sometimes be confused with a "price premium" theory of injury, but there is an important difference between a conclusory and subjective allegation that a plaintiff "would have paid less" had she known the truth--versus a plaintiff alleging that the defendant's use of a deceptive term permitted it to charge a "premium."  This distinction was highlighted in *Brandt v. CremaLita Mgmt.*, 2006 N.Y. Misc. LEXIS 4101 at *17, n. 4 (Sup. Ct. N.Y. Cty., June 9, 2006) (Attached hereto as Exhibit A). In *Brandt*, the plaintiff alleged that he would not have purchased the defendant's desserts in the quantities that he did and for the prices that he paid were it not for defendant's alleged deception regarding the dessert's nutritional value.  Plaintiff sought an order permitting him to maintain the action as a class action.  Only in plaintiff's reply in support of his motion did he assert that the defendant was able to charge an excessive price because of the alleged deception (*i.e.,* a "price premium" injury theory).  In denying the plaintiff's motion for class certification, the *Brandt* court highlighted the difference between the conclusory allegation that plaintiff would not have paid the price he did for the desserts,  and the allegation that the defendant was able to charge an excessive price because of the alleged deception.  Only the latter, the court found, was a cognizable injury.  The former, the court held, has already been rejected by *Small v. Lorillard*, which held that a claim for reimbursement of the purchase price—either full or partial—"does not support the allegation of injury."  *See Brandt*, 2006 N.Y. Misc. LEXIS 4101 at *17, n.4, citing *Small v. Lorillard*, 94 NY2d at 56, n5.

### 3.    Plaintiff has not Adequately Alleged that AMRG Charged a "Price Premium" for the Boots

Finally, a "price premium" theory of injury may sometimes be a legally cognizable theory of damages under NY GBL §§349/350, but Plaintiff fails to plead a plausible basis for its application here.

The AC alleges, in passing, that "manufacturers such as Bass seek to trade on their brand names and the quality of their normal retail lines to create the impression that the factory store merchandise is similar quality merchandise, offered at a discount. Accordingly, Bass is able to charge a premium for this lesser-quality merchandise." AC ¶13.   But Plaintiff has pled no facts to support this assertion as to Bass in general, and most certainly has pled no facts to support this assertion as to the Quincy boots in particular.  Plaintiff has not pled that she ever saw or considered Bass shoes, or saw Quincy boots, anywhere, at any time in her life before she went to the store in Fishkill in October, 2015.  The Complaint pleads nothing to show that Plaintiff had any specific expectation as to the quality of Bass products before that date.  There is also nothing to suggest that the boots were of low or inferior quality, or that boots of comparable quality sell for less at other retailers.

To state a claim under the price premium theory, a plaintiff must allege facts to support a claim that she paid more than the *actual value* of the merchandise she received.  *See, e.g., Gomez-Jiminez v. New York Law School*, 943 N.Y.S.2d 834 (N.Y. Sup. Ct. NY Cnty. 2012) (addressing N.Y. GBL §349 claim, holding that plaintiffs' alleged premium price theory of harm was impermissibly speculative where the complaint "does not allege facts from which pecuniary damages can be inferred as a direct result of the alleged wrong."); *accord Camasta v. Jos. A. Banks Clothiers, Inc.,* 761 F.3d 732, 739-740 (7th Cir. 2014) (affirming dismissal of complaint under Ill. Consumer Fraud Act alleging deceptive pricing advertising because plaintiff failed to

"sufficiently plead[] that he paid more than the actual value of the merchandise he received");

*Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) (under the New Jersey Consumer Fraud Act, allegations that comparable products cost twenty-five percent less than the products at issue without alleging the identity and cost of such products "are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss."); *Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282, 301 (D.N.J. 2009) ("In evaluating whether a plaintiff has suffered an ascertainable loss, the Court need not countenance 'hypothetical or illusory' losses or the wholly subjective expectations of a consumer.").

Here, Plaintiff fails to allege any such facts.  Numerous courts addressing similar deceptive pricing claims have disposed of actions where the plaintiff could not plead or prove that the items he or she purchased were worth less than the amounts he or she paid.  *See, e.g., See, e.g., Camasta,* 761 F.3d at 740 (Plaintiff "has not sufficiently pleaded that he paid more than the actual value of the merchandise received"); *Kim v. Carter's Inc*., 598 F.3d 362, 365-66 (7th Cir. 2010) (finding that consumers failed to allege injury where retailer sold them clothing that was advertised as discounted from suggested prices); *Mulder v. Kohl's Department Stores, Inc*., No. 15-11377-FDS, 2016 WL 393215, at *6 (D. Mass., Feb. 1, 2016) ("[I]t appears that [plaintiff] paid $40.78 for items that were, in fact, worth $40.78.  The fact that the plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm. …); *Shaulis v. Nordstrom Inc*., 120 F. Supp. 3d 40, 49-53 (D. Mass. 2015) (holding under Massachusetts law that there is no cognizable economic injury where "it appears that she paid $49.97 for a sweater that is, in fact, worth $49.97….She does not allege that it is worth less than the selling price, that it was

manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective….[T]he fact that plaintiff may have been manipulated into purchasing the sweater because she believed she was getting a bargain does not necessarily mean she suffered economic harm…."); *Waldron v. Jos. A. Bank Clothiers, Inc.,* No. 12-cv-02060 (D. N.J., Jan. 28, 2013) (slip op. attached hereto as Exhibit B)("Plaintiffs have not alleged that the product was defective, nor that they did not receive what they were promised…Nor do [they] allege that they were dissatisfied…, demanded a refund, or had their refund refused.  Plaintiffs' claimed monetary loss is thus purely hypothetical and speculative [and]…do not constitute an 'ascertainable loss' under N.J.S.A. 56:8-19.").

Finally, to the extent that Plaintiff contends that Bass could charge a premium for Quincy boots because it deceived the general public about the quality of those boots (and she does not plead this specifically), she is attempting to assert a "fraud on the market" type theory.  Courts in New York and nationally have rejected fraud on the market theories when applied outside the context of securities fraud.  *See, e.g., Securities Investor Protection Corporation v. A.R. Baron & Co.*, 222 F.3d 63, 73 (2d Cir. 2000) (internal citations and quotations omitted)("[F]ederal courts repeatedly have refused to apply the fraud on the market theory to state common law cases despite its wide acceptance in the federal securities fraud context."); *accord Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1088 (N.J. 2007) ('[T]he fraud on the market theory [is] inappropriate in any context other than federal securities fraud litigation. Therefore, to the extent that plaintiff seeks to prove [ ]  that the price charged for [the drug] was higher than it should have been as a result of defendant's fraudulent marketing campaign, … the theory must fail.'); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155, 776 N.E.2d 151, 164 (2002) (plaintiff cannot sustain a claim under the Illinois CFA unless the defendant has

actually deceived him or her); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095-1100 (1993)

(California law does not permit plaintiffs to state a cause of action for deceit without pleading

actual reliance).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Bass respectfully requests that the Amended Complaint be

dismissed.

DATED:  October 10, 2016                    **SEDGWICK LLP**

By:  /s/  *Anthony Anscombe*
                                            Stephanie A. Sheridan
                                            Anthony J. Anscombe
                                            Laurie Kamaiko

*Attorneys for Defendant AM Retail Group, Inc.*


Anthony J. Anscombe (admitted *pro hac vice*)
SEDGWICK LLP
One North Wacker Drive, Suite 4200
Chicago, IL 60606-2841
anthony.anscombe@sedgwicklaw.com
tel: 312.641.9050
fax: 312.641.9530

Stephanie A. Sheridan (admitted *pro hac vice*)
SEDGWICK LLP
333 Bush Street
San Francisco, CA 94104
Stephanie.Sheridan@sedgwicklaw.com
tel: 415.781.7900
fax: 877.547.2780

Laurie Kamaiko (NY Bar No. 1728781)
SEDGWICK LLP
Brookfield Place
225 Liberty Street, 28th Floor
New York, New York 10281-1008
Laurie.Kamaiko@sedgwicklaw.com
tel: 212.422.0202
fax: 877.543.9170

# EXHIBIT A

Cited
As of: September 30, 2016 2:07 PM EDT

## *Brandt v. CremaLita Mgmt. LLC*

Supreme Court of New York, New York County

June 9, 2006

600566/04

**Reporter**
2006 N.Y. Misc. LEXIS 4101; 235 N.Y.L.J. 111

Brandt v. CremaLita Management LLC

## Core Terms

calorie, class member, products, advertising, consumer, fat, class action, cholesterol, desserts, deceptive, misleading, issues, class certification, frozen dessert, fat free, questions, nutritional, cause of action, misrepresentations, predominate, ice cream, warranty, flavors, retail, plaintiff's claim, physical injury, certification, announced, customers, practices

## Case Summary

### Procedural Posture

Plaintiff individual brought a consumer class action against defendant frozen dessert manufacturer, alleging, inter alia, violations of *General Business Law § 349*, fraud, and breach of warranty arising from alleged misrepresentations concerning the true caloric, cholesterol, and fat content of a frozen dessert product. The individual moved for an order pursuant to CPLR art. 9 that the action be maintained as a class action and defining the class.

### Overview

The individual failed to show that question of laws or fact predominated over questions affecting individual class members with respect to his *General Business Law § 349* claims where his allegation of physical injury, i.e., that diseases and adverse health conditions had arisen, or would arise, as a result of consuming the frozen dessert product, created issues that overwhelmed any common issues and rendered the case unmanageable as a class action. The individual also failed to show that his *§ 349* claims were typical of the putative class members' claims. The claims for fraud, breach of implied warranty, and negligence were

not appropriate for class certification as the court was not convinced that presuming justifiable reliance on the manufacturer's alleged misrepresentation of fact was applicable. Moreover, the complaint alleged only that many, not most, customers would not have purchased the dessert had they known the true nutritional value. With respect to the negligence claim, there were numerous individual factual and causation questions that required a case-by-case analysis to determine whether the health of each class member was adversely affected and, if so, why.

### Outcome

The motion to maintain the action as a class action was denied.

## LexisNexis® Headnotes

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

**HN1** Pursuant to *CPLR 901*, in order to obtain class certification, the plaintiff must demonstrate that: (1) the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; (2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; and (5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

**HN2** *CPLR 902* lists the factors which the court shall consider in determining whether the action may proceed as a class action: (1) the interest of members of the

class in individually controlling the prosecution or defense of separate actions; (2) the impracticability or inefficiency of prosecuting or defending separate actions; (3) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (4) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (5) the difficulties likely to be encountered in the management of a class action.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > General Overview

**HN3** Under *CPLR 902*, the plaintiff bears the burden to establish that factual and legal issues common to the claims of all members of the putative class predominate over all other issues that affect only individual class members.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

**HN4** To have a viable claim under *General Business Law § 349*, a plaintiff must allege that the defendant engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof. Deceptive or misleading representations or omissions are defined as those likely to mislead a reasonable consumer acting reasonably under the circumstances. Nonetheless, the deceptive act or practice must be the actual misrepresentation or omission to a consumer, by which the consumer is caused actual, although not necessarily pecuniary, harm. Thus, to prevail on a cause of action under *§ 349*, the plaintiff must show that the defendant made falsehoods or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances, that s/he was deceived by those false statements or omissions and that, as a result, s/he was caused injury. While *§ 349* does not require proof of reliance, it does require proof of an injury. To have a claim under *§ 349*, a plaintiff must allege that he or she has been exposed to the alleged misrepresentations, causing plaintiff to sustain injury.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

**HN5** Class certification is not appropriate on a *General Business Law § 349* claim where questions of whether each individual was exposed to, and influenced by, the

advertising would predominate.

Torts > ... > Fraud & Misrepresentation > Actual Fraud > Elements

Torts > Products Liability > Theories of Liability > Breach of Warranty

**HN6** Unlike a claim under *General Business Law § 349*, a plaintiff's claims for common law fraud and breach of warranty require proof of reliance.

Civil Procedure > ... > Class Actions > Prerequisites for Class Action > Commonality

**HN7** Class certification is denied where a plaintiff fails to demonstrate that all class members saw the same advertisements. However, class certification may nonetheless be granted where a plaintiff demonstrates that class members saw advertising which was substantially uniform.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

**HN8** The Court of Appeals of New York holds that although the inflated price of a product which would not have been purchased but for the deceptive practices may constitute injury for purposes of *General Business Law § 349*, a claim for reimbursement of the purchase price of the product does not support the allegation of injury.

Torts > ... > Fraud & Misrepresentation > Actual Fraud > Elements

**HN9** With respect to a common-law fraud claim, a plaintiff must prove, among other things, justifiable reliance on an affirmative misrepresentation of fact by the defendant and injury suffered as a result.

Torts > Products Liability > Theories of Liability > Breach of Warranty

**HN10** A claim for breach of implied warranty requires proof of reliance, requiring not allegedly obvious assumptions, but a case by case analysis.

**Judges:** **[*1]** Justice Goodman

**Opinion by:** Goodman

# Opinion

This is a consumer class action brought by plaintiff

Stephen Brandt on behalf of himself and all other persons who purchased "CremaLita" frozen dessert products in New York State. In the amended class action complaint, dated September 8, 2004 (the Complaint), plaintiff seeks damages from defendants CremaLita Management, LLC, CremaLita Franchising, LLC, CremaLita Wholesale, Inc., Allison Kimberly Britz and Jeffrey Britz (collectively, CremaLita), based on CremaLita's alleged material misrepresentations and violations of New York law concerning the true caloric, cholesterol and fat content of CremaLita, which allegedly caused plaintiff and the class members to purchase this frozen dessert product and suffer damages.

In the Complaint, plaintiff asserts causes of action against CremaLita for: (1) violations of General Business Law (GBL) *§ 349*, i.e., false and deceptive business practices (first cause of action); (2) violations of *GBL § 350*, i.e., false and deceptive advertising (second cause of action); (3) common-law fraud for having materially misrepresented, or failed to disclose the correct **[*2]** nutritional information as to the fat, calories and cholesterol in CremaLita frozen desserts (third cause of action); (4) breach of the implied warranty that the information contained in the nutritional labels was correct (fourth cause of action); and (5) negligence insofar as CremaLita's alleged inaccurate and misleading nutritional information breached the duty of care owed to plaintiff and the class members, and proximately caused them to purchase the product and suffer injuries (fifth cause of action).

Plaintiff now moves for an order, pursuant to *Article 9 of the CPLR*, determining that this action be maintained as a class action (*CPLR 902*), defining the class Brandt, the plaintiff, represents (the Class) as all persons and entities who purchased CremaLita frozen desserts in New York (the Class Members), and requiring that defendants bear the expense of notification (*CPLR 904 [d]*). CremaLita claims that plaintiff has failed to satisfy the prerequisites for certification of a class action.

BACKGROUND

CremaLita manufactures and sells a line of frozen dessert products which it promotes as a healthful alternative to traditional ice **[*3]** cream in terms of calories, fat and cholesterol. The products are offered in a variety of flavors, and toppings. In Manhattan, CremaLita is currently sold in five CremaLita retail establishments, and is also sold, through distributors, to corporate cafeterias and a small number of other retail outfits.

In December 2003, the New York City Department of Consumer Affairs (DCA) filed a Notice of Violation against CremaLita, charging it with committing deceptive trade practices. DCA's press release, dated December 30, 2003, and titled "DCA Cites Frozen Dessert Retailer Cremalita for Fudging Calorie and Fat Content Claims," states, in relevant part:

> Just when you thought it was safe to start your post-holiday diet, the [DCA] today announced it has cited frozen dessert retailer CremaLita Management, LLC with 61 counts of deceptive and misleading trade practices. CremaLita Management, LLC owns 50 percent or more of each of the eight stores that dispenses CremaLita's frozen dessert product in New York City. The DCA charges that CremaLita deceives its customers by making false claims about the content of its frozen dessert products including that they are "low calorie," "fat free, **[*4]** " "ice cream," "low fat," and "cholesterol free."…

> "New Yorkers think they're getting a sweet deal, but in reality they are being fed false claims and three times the calories," said DCA Commissioner Gretchen Dykstra. "Our message to the industry is loud and clear--we take deceptive claims seriously, and will make sure CremaLita and other companies' ads are true so consumers know exactly what they're paying for and how much they won't be losing."

At the request of the DCA, the U.S. Food and Drug Administration (FDA) collected and tested samples of CremaLita's products showing vast differences in what has been advertised over the last year and what is sold in CremaLita's New York City stores. As a result, DCA's charges include:

>   . CremaLita claims its products are "low calorie," "fat free," "cholesterol free," and "lowfat," when, in fact, its products are not "low calorie" or "fat free," and certain flavors of its product are not "cholesterol free" or "low fat."

>   . CremaLita claims its products contain 60 calories per four-fluid ounces, when in fact depending on the flavor of the products, it contains between 154 calories and as much as 181 calories per four-fluid **[*5]** ounces.

>   . CremaLita claims its products are dispensed

in a serving size of four-fluid ounces that contains 60 calories, when, in fact, its standard "small" serving size is approximately six fluid ounces and contains between 235 and 271 calories, depending on the flavor.

. CremaLita claims its products are "NY's lowest calorie ice cream" or "incredible fat free ice cream" when in fact the advertised product is not ice cream.

In May 2004, CremaLita entered into a settlement agreement with the DCA, which the DCA announced in a press release, dated May 26, 2004, entitled "New Yorkers Get the Real Skinny: Consumer Affairs Announces Agreement with Cremalita, Agreement Provides Consumers with New Product Information and Ensures Product Claims Meet Government Standards; DCA to Monitor." [1] The press release states, in pertinent part:

New York City Department of Consumer Affairs (DCA) Commissioner Gretchen Dykstra, joined by CremaLita Management, LLC president Allison Britz, today announced an agreement with the frozen dessert retailer to settle agency charges of misleading calorie and fat content claims. The announcement, which ensures that the company's advertising [*6] claims match government standards for "low calorie," "fat free," "low fat," "cholesterol free," and "ice cream," was made at CremaLita's store on 1369 Third Avenue in Manhattan.

CremaLita Management, LLC…was cited by the DCA in December 2003 for violating the City's Consumer Protection Law. DCA is also investigating…other retailers selling frozen dessert products in New York City.

CremaLita has agreed to the following for its New York City stores:

Will not use the term "low calorie" to describe any of its current products.

Will conduct independent testing--by a mutually agreed-upon laboratory--of any new products

claiming to be "low calorie," "low fat," or "fat free."

When advertising a fat free product, CremaLita will display signage informing customers of all flavors of the product that are not fat free.

When advertising a product as "cholesterol free," CremaLita will clearly disclose that cream in its product adds a trivial amount of cholesterol, as well as comply with all relevant federal standards.

When advertising amounts of sodium, carbohydrates, fat, and/or the calorie amounts, CremaLita will clearly disclose the range of amounts to customers, [*7] as well as the highest amount. [2]

Plaintiff, a 32-year old Manhattan resident, employed as a temporary paralegal at the law firm of Paul Weiss Rifkind Wharton & Garrison (Paul Weiss), commenced this action soon after CremaLita's settlement with the DCA. Plaintiff alleges that he purchased CremaLita products in order to obtain the health and nutritional benefits that were represented; that he did not get what he wanted and bargained for because he was deceived into believing that he was buying a cholesterol-free, low calorie, low fat dessert, [*8] which, in fact, was not true. He claims that, since its inception in August 2001 until at least May 2004, CremaLita: (1) violated *GBL § 349* by engaging in deceptive trade practices by offering a consumer goods for sale, and, in connection with that offer, made false and/or misleading statements which have the capacity, tendency, or effect of deceiving and misleading New York consumers; (2) violated *GBL § 350* by falsely advertising its products; (3) committed common-law fraud; (4) breached an implied warranty; and (5) acted negligently towards plaintiff and other Class Members by engaging in such conduct (Complaint, PP39-40). Although the Complaint alleges that plaintiff purchased CremaLita "frozen desserts at various CremaLita stores located in Manhattan from 2001 through 2003 because of the representations made by the Company that their desserts were low calorie" (Complaint, P7), responses to interrogatories and plaintiff's deposition testimony indicate that plaintiff made purchases at the Paul, Weiss cafeteria only (Tr April 14, 2005 at pg 34).

---

[1] Having entered into and agreed to the terms of the settlement agreement, this is not the proper forum for CremaLita to assert that the DCA's investigation was misdirected, that its test results were grossly inaccurate, or that the DCA's accusations were entirely erroneous.

[2] Paragraph three of the 23 paragraph settlement agreement recites that certain charges in the initial Notice of Violation were based, in good faith, on an erroneous product analysis by the FDA.

Paragraphs 51 to 58 of the Complaint are devoted to the topic of "injury." Paragraph [*9] 52 states that "plaintiff and other members of the Class unknowingly ingested a greater number of calories and greater amounts of carbohydrates, fat and cholesterol than they would have had they know [sic] the truth about CremaLita frozen desserts." The subsequent paragraphs detail some of the medical risks associated with the consumption of excess calories, carbohydrates, sugar, and cholesterol; the fact that excess weight "can lead to many health problems, including but not limited to cardiovascular problems, mobility problems, and cancer;" and that "in today's culture, excess weight gain carries a social stigma and can lead to negative self-esteem issues" (Complaint, P54).

Plaintiff testified at his deposition that, on a weekly basis, for approximately four to seven months, he ate a small-sized serving of CremaLita at the Paul Weiss cafeteria. According to plaintiff, during the same time frame: (a) he generally tried to maintain healthful eating habits, but also occasionally ate meals from various fast food chains; (b) due to hip and knee problems, he was unable to do much exercise; and (c) he gained some weight.

An IME of plaintiff was conducted, and, despite his less-than-perfect [*10] diet and lack of physical regimen, the examining physician determined that plaintiff suffers from none of the numerous diseases and conditions alleged in the Complaint on behalf of the purported Class (such as diabetes, hypoglycemia, cardiovascular problems and cancer). Rather, the physician reported that plaintiff's condition, other than his excess weight, was generally good.

DISCUSSION

HN1 Pursuant to CPLR 901, in order to obtain class certification, the plaintiff must demonstrate that:

1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

4. the representative parties will fairly and adequately protect the interests of the class; and

5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

HN2 CPLR 902 lists the factors which the court shall consider in determining [*11] whether the action may proceed as a class action:

1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;

2. The impracticability or inefficiency of prosecuting or defending separate actions;

3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum;

5. The difficulties likely to be encountered in the management of a class action.

HN3 Plaintiff bears the burden to establish that factual and legal issues common to the claims of all members of the putative class predominate over all other issues that affect only individual class members (see Banks v. Carroll & Graf Publ., Inc., 267 AD2d 68, 69, 699 N.Y.S.2d 403 [1st Dept 1999], citing Small v. Lorillard Tobacco Co., 252 AD2d 1, 6, 679 N.Y.S.2d 593 [1st Dept 1998], affd 94 NY2d 43, 720 N.E.2d 892, 698 N.Y.S.2d 615 [1999]).

Plaintiff contends that his request for certification of a class action should be granted because: (a) the class is so numerous that joinder of all class members is impracticable; (b) [*12] there are questions of law and fact common to the class that predominate over individual questions; (c) plaintiff's claims are typical of those of the other Class Members; (d) plaintiff (and plaintiff's counsel) will adequately represent and defend the interests of the Class Members; and (e) the class action device is the best method by which plaintiff and other Class Members will be able to obtain redress for their claims. Plaintiff also contends that consideration of each of the additional factors set forth in CPLR 902 supports certification. CremaLita, however, takes the position that plaintiff has not satisfied any of the requirements for a class action, except the numerosity requirement.

HN4 To have a viable claim under *GBL § 349*, a plaintiff must allege that the defendant engaged "in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof" (*Small v. Lorillard Tobacco Co., 94 NY2d 43, 55, 720 N.E.2d 892, 698 N.Y.S.2d 615 [1999]; Solomon v. Bell Atlantic Corp., 9 AD3d 49, 52, 777 N.Y.S.2d 50 [1st Dept 2004])*. Deceptive or misleading representations or omissions are defined as those likely [*13] to mislead a reasonable consumer acting reasonably under the circumstances (*id. at 52*). Nonetheless, the deceptive act or practice must be "the actual misrepresentation or omission to a consumer" (*Goshen v. Mutual Life Ins. Co. of New York, 98 NY2d 314, 325, 774 N.E.2d 1190, 746 N.Y.S.2d 858 [2002])*, by which the consumer is "caused actual, although not necessarily pecuniary, harm "(*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 NY2d 20, 26, 647 N.E.2d 741, 623 N.Y.S.2d 529 [1995])*. Thus, to prevail on a cause of action under *GBL § 349*, the plaintiff must show that the defendant made falsehoods or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances, that s/he was deceived by those false statements or omissions and that, as a result, s/he was caused injury (*Goshen, 98 NY2d at 324-25*, supra). While *GBL § 349* does not require proof of reliance, it does require proof of an injury (see *Hazelhurst v. Brita Products Co. (295 AD2d 240, 241-42, 744 N.Y.S.2d 31 [1st Dept 2002])*. To have a claim under *GBL § 349*, a plaintiff must allege that he or she has been exposed [*14] to the alleged misrepresentations, causing plaintiff to sustain injury (see *Solomon v. Bell Atlantic Corp.; 9 AD3d 49, 52, 777 N.Y.S.2d 50 [1st Dept 2004])*. HN5 Class certification is not appropriate where "questions of whether each individual was exposed to, and influenced by, the advertising would predominate" (*Carnegie v. H & R Block, 269 AD2d 145, 147, 703 N.Y.S.2d 27 [1st Dept 2000])*.

HN6 Unlike a claim under *GBL § 349*, plaintiff's claims for common law fraud and breach of warranty, require proof of reliance. In *Hazelhurst v. Brita Products Co. (295 AD2d 240, 744 N.Y.S.2d 31*, supra), the Court decertified a class, noting

Here, the need for particularized proof of reliance and resulting injury upon Brita's alleged misrepresentations about its products precludes certification since individual issues, not common issues of the class, predominate (*CPLR 901 [a] [2]*). Reliance is required for all of plaintiffs' causes of action, except for that based upon *GBL § 349*, and

such reliance may not be presumed where, as here, a host of individual factors could have influenced a class member's decision to purchase the [*15] product (see, *Small, 94 NY2d at 55*).... Clearly, reliance upon the alleged misrepresentations of Brita is an issue that varies from individual to individual. *Id. at 241-42.*

Plaintiff has not satisfactorily shown that: (a) common questions predominate over individual ones; (b) his claims are typical of the putative class; (c) he can adequately represent the Class Members in an action; and/or (d) the use of a class action is superior to other available methods of adjudication.

Plaintiff's GBL Claims

The central problem in certifying this class is that questions of law or fact do not predominate over questions affecting individual Class Members. While it is true that Class Members share the common issue regarding the alleged falsity of CremaLita's nutritional disclosures, plaintiff's allegation of physical injury (that various diseases and/or adverse health conditions have arisen, or will arise, as a result of consuming CremaLita products), creates issues which overwhelm any common issues and renders this case unmanageable as a class action. [3] [*17]  Plaintiff does not dispute

_____

[3] Contrary to defendants' contention, with respect to the GBL claims, plaintiff has adequately demonstrated that the Class Members were exposed to the false advertisements. HN7 Class certification has been denied where a plaintiff fails to demonstrate that all class members saw the same advertisements (*Solomon v. Bell Atlantic, supra* [certification denied in part because plaintiffs failed to demonstrate that class members saw the same DSL computer advertisements, which varied widely, and, where the record indicated that some plaintiffs did not see any advertisements before subscribing based on word of mouth]; *Carnegie v. H & R Block, Inc., 269 AD2d 145, 703 N.Y.S.2d 27*, supra [class certification denied in part because plaintiff could not show that she received any written deceptive statements which were uniformly distributed to class members]). However, class certification may nonetheless be granted where a plaintiff demonstrates that class members saw advertising which was substantially uniform (see *Taylor v. American Bankers Ins. Grp., Inc., 267 AD2d 178, 700 N.Y.S.2d 458 [1st Dept 1999]* [although defendants used a variety of forms and promotions, where solicitations do not differ materially, issues of reliance and causation do not preclude class certification]). At his deposition, plaintiff testified that before he purchased the desserts at the Paul, Weiss cafeteria, he observed a sign, next to the machine, which revealed a low calorie number for the

Case 7:16-cv-01748-NSR    Document 23    Filed 11/28/16    Page 32 of 45

Page 7 of 8
2006 N.Y. Misc. LEXIS 4101, *17

defendants' expert affidavit, which indicates that various factors may cause the adverse health [*16] conditions complained of in the Complaint, such as the individual's age, family history, level of physical fitness, dietary intake, alcohol consumption, race, and gender. Plaintiff's citation to cases holding that class certification should not be denied merely because the damages for each member may differ, is unavailing. With respect to the damages for physical injury, the issue is not whether the amounts of damages will differ for each Class Member, but rather, whether each class member has suffered any physical injury at all (or increased susceptibility to physical injury), as the result of consumption of CremaLita products. Consideration of physical injury (or susceptibility thereto) gives rise to numerous individual factual questions, as well as causation questions, rather than common issues, requiring a case-by-case analysis to determine whether the health of each Class Member was adversely affected, and, if so, the reasons why. [4]

Plaintiff has also failed to demonstrate that his claims are typical of the putative Class Members' claims. Although plaintiff throws out a litany of possible medical conditions typically associated with high fat, high calorie and/or high cholesterol intake (such as diabetes, hypoglycemia, cardiovascular problems and cancer), he appears to suffer [*18] none of these afflictions, except for being overweight. As a result, the Court cannot find that the class action mechanism would be a superior method for the fair and efficient adjudication of plaintiff's

---

[4] serving (Tr April 14, 2005 at 35-36). Unlike in *Solomon, supra*, where some plaintiffs did not see the allegedly misleading advertisement, the Complaint states that all Class Members saw substantially similar fat free or low calorie advertisements in numerous spots at CremaLita stores, on the dessert cups itself, on CremaLita take-out menus, or on CremaLita's website. Therefore, when CremaLita products were purchased, the Complaint alleges that substantially similar advertisements were displayed in all venues.

[4] It is not until plaintiff's Memorandum of Law In Reply that plaintiff focuses on what he then deemed the primary injury- the excess purchase price. The Complaint alleges that CremaLita customers would not have purchased CremaLita desserts in the quantities that they did and for the prices that they did, had they known the true nutritional value. *HN8* The Court of Appeals has already held that although the inflated price of a product which would not have been purchased but for the deceptive practices may constitute injury for purposes of *GBL § 349*, a claim for reimbursement of the purchase price of the product does not support the allegation of injury (see *Small v. Lorillard Tobacco Co., 94 NY2d 43, 56 n. 5, 720 N.E.2d 892, 698 N.Y.S.2d 615, supra*).

GBL claims.

Other Claims

While DCA has alleged that CremaLita's advertising is wholly contrary to the public interest, plaintiff's claims for fraud, breach of implied warranty, and negligence are not appropriate for class certification. *HN9* With respect to plaintiff's common-law fraud claim, plaintiff must prove, among other things, justifiable reliance on an affirmative misrepresentation of fact by the defendant and injury suffered as a result (see *164 Mulberry St. Corp. v. Columbia Univ., 4 AD3d 49, 58, 771 N.Y.S.2d 16 [1st Dept 2004]*). *HN10* The claim for breach of implied warranty that the nutritional information was correct also requires proof of reliance, requiring not allegedly obvious assumptions, but a case by case analysis (see *Rosenfeld v. A.H. Robins Co., 63 A.D.2d 11, 407 N.Y.S.2d 196 [2d Dept 1978]*). Although not specifically requested, plaintiff apparently seeks to have the Court presume reliance (i.e., by assuming that CremaLita desserts are less flavorful and therefore, would not [*19] have been purchased in lieu of tastier desserts, but for the false advertising). While it may be logical to assume that the promise of a low calorie, low cholesterol, low fat product would draw the consumer to one dessert over another, and although courts have presumed reliance in limited instances (see *Ackerman v. Price Waterhouse, 252 AD2d 179, 196-98, 683 N.Y.S.2d 179 [1st Dept 1998]*), the Court is not convinced that the presumption should apply here (see *Klein v. Robert's American Gourmet Food, Inc., 28 A.D.3d 63, 808 N.Y.S.2d 766, 2006 NY App Div LEXIS 1005 [2d Dept 2006]* [court would not presume reliance in connection with plaintiff's claims for common law fraud, negligent misrepresentation, and breach of express warranty because some consumers may have consumed Pirate's Booty, Fruity Booty and Veggie Booty for reasons unrelated to the products' advertised fat and caloric content]). Even if one presumes reliance, plaintiff's own Complaint alleges only that many, if not most, customers would not have purchased CremaLita products had they known the true nutritional value. Therefore, as plaintiff himself does not allege that all Class Members purchased the CremaLita desserts because of the advertised [*20] low fat and caloric content, as opposed to for any other reason, issues of reliance require individual proof which precludes class treatment (see *Katz v. NVF Co., 100 AD2d 470, 473, 473 N.Y.S.2d 786 [1st Dept 1984]*). Further, plaintiff's claim for negligence is not appropriate for class certification for the same reasons the GBL claims are not--that numerous individual factual questions, as well

as causation questions require a case-by-case analysis to determine whether the health of each Class Member was adversely affected, and, if so, the reasons why.

CONCLUSION

It is ORDERED that plaintiff's motion is denied.

# EXHIBIT B

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JAMES WALDRON and MATTHEW | : | **Hon. Dennis M. Cavanaugh** |
| VILLANI, individually and on behalf of | : | |
| all others similarly situated, | : | |
| | : | **OPINION** |
| Plaintiffs, | : | |
| | : | Civil Action No. 12-CV-02060 (DMC) (JAD) |
| | : | |
| v. | : | |
| | : | |
| JOS. A. BANK CLOTHIERS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon motion by Defendant Jos. A. Bank Clothiers, Inc. ("Defendant" or "Jos. A. Bank") to dismiss the Amended Class Action Complaint ("Amended Complaint") of Plaintiffs James Waldron and Matthew Villani, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), pursuant to FED. R. CIV. P. 12(b)(6). (Am. Compl., Sept. 6, 2012, ECF No. 16). Pursuant to FED. R. CIV. P 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons expressed herein that Defendant's Motion to Dismiss is **granted without prejudice**. Defendant's subsequent Motion to Strike Class Allegations of the Amended Class Action Complaint is thus moot. (Mot. to Strike, Sept. 6, 2012, ECF No. 17).

## I.    BACKGROUND

---

1        The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

On April 5, 2012, Plaintiffs filed the original two-count complaint.  (Compl., Apr. 5, 2012, ECF No. 1).  Defendant responded by filing a Motion to Dismiss and a Motion to Strike.  Plaintiffs then sought leave to amend their claims and filed an Amended Complaint.  (Am. Compl., Aug. 6, 2012, ECF No. 15).  Plaintiffs assert an alleged violation of the  New Jersey Consumer Fraud Act ("NJCFA") and claims of unjust enrichment and common law restitution.

Jos. A. Bank was established in 1905 and is one of the nation's leading retailers of men's classically-styled tailored and casual clothing, sportswear, footwear, and accessories.  (Am. Compl. ¶ 22).   Jos. A. Bank has over 500 stores in forty-two (42) states and the District of Columbia.  (Am. Compl. ¶¶ 22).  Jos. A. Bank advertises, markets, and promotes merchandise on its website through direct mail marketings, catalogs, and television and radio commercials.  (Am. Compl. ¶ 23).  The company also maintains an e-commerce website which allows consumers throughout the United States to view advertising and promotional material and purchase Jos. A. Bank merchandise.  (Am. Compl. ¶ 23).  Plaintiffs allege that "[t]he majority of Jos. A. Bank's merchandise has been continually on sale for the past several years, even though each advertised sale is described as being of limited duration, thus creating the false and misleading impression that the price will increase back to the 'regular price' if a consumer does not make a purchase by the end of the sale."  (Am. Compl. ¶ 26).

Plaintiffs further alleges that Jos. A. Bank deceives consumers through its Corporate Card Program.  Consumers may provide their name and address to Jos. A. Bank, and in exchange, receive a Corporate Card that offers twenty (20) percent off its regular priced merchandise.   (Am. Compl. ¶ 26).  Plaintiffs allege that the Consumer Card program offers sales "not available to the general public," but that these sales were not, in actuality, exclusive.  (Am. Compl. ¶ 29).

Defendant now moves to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) and 12(b)(1).  (Am. Compl. ¶ 29).

**II.**   **LEGAL STANDARD**

**A.**   **Standard of Review for Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(6)**

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a ... motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).  "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, 2009 WL 3806296, *3 (D. N.J. Nov. 10, 2009) (quoting Iqbal, 129 S.Ct. at 1950).  "[W]here the well-pleaded facts do not permit the court to infer more

3

than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950.

**B.** **F**ED. **R.** **C**IV. **P.** **12(b)1**

Upon a Rule 12(b)(1) motion addressing the existence of subject matter jurisdiction over a plaintiff's complaint, "no presumptive truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J. 1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction." Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.) Cert. denied, 454 U.S. 897 (1981)). "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176, 178 (3d Cir. 2000)). However, "[w]here an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited." Martinez, 875 F. Supp. at 1071 (citing Williamson, 645 F.2d at 413 n.6).

**C.** **F**ED. **R.** **C**IV. **P.** **8(a) and 9(b)**

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F**ED**. R. C**IV**. P. 8(a). Fraud-based claims are subject to F**ED**. R. C**IV**. P. 9(b). Dewey v. Volkswagon, 558 F.Supp.2d 505, 524 (D.N.J. 2008) ("[New Jersey Consumer Fraud Act] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).").

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A Plaintiff must state the circumstances of the alleged fraud "with sufficient particularity to place the Defendant on notice of the 'precise misconduct with which [it is] charged.' " Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Lum v. Bank of America, 361 F.3d 217, 223–224 (3d Cir. 2004). To satisfy this standard, the Plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

III. **DISCUSSION**

A. **NJCFA Claims**

In Count I of their Amended Complaint, Plaintiffs allege violations of the NJCFA. The relevant provision of the NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2. Private causes of action are authorized under N.J. Stat. Ann. § 56:8-19. To state a claim under the NJCFA, a plaintiff must establish "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Mercado v. Bank of America, N.A., 2012 WL 5629749, at * 2 (D.N.J. Nov. 15, 2012) (quoting Bosland v. Warnock, Dodge, Inc., 197 N.J. 543, 557 (2009)).

5

### 1.    Unlawful Conduct

To constitute consumer fraud, "the business practice in question must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average consumer." Turf Lawnmower Repair, Inc.v. Bergen Record Corp., 655 A.2d 417, 430 (N.J. 1995). It is common practice for retail marketing to advertise promotions and sales events throughout any given year. Plaintiffs do not lend factual support to their conclusion that Jos. A. Bank's practices deviate from the norm of reasonable business practice and instead attempt to shift the burden to Jos. A. Bank to demonstrate other retail marketing practices. (Pls.' Opp. Br. 14, Sept. 27, 2012, ECF No. 18). Plaintiffs allege that Jos. A. Bank entered into an Assurance of Discontinuance ("the Assurance") with the Attorney General of the State of New York, in which the Company agreed not to advertise, offer, or sell any item at a "sale" or discount from a purported "regular" price, unless the price is the "actual bona fide price at which the item was openly offered for sale by Jos. A Bank." (Am. Compl. ¶ 31). However, Plaintiffs allege no facts linking the Assurance with the instant matter nor do they assert that Jos. A. Bank's current marketing practices are identical to the advertising methods utilized before the Assurance was entered into.

Even after amendment, the Amended Complaint still fails to meet the particularity standard set forth in Rule 9(b). Plaintiffs have alleged that Jos. A. Bank misrepresented the regular pricing of its merchandise, yet have not provided any facts which demonstrate that the "sale" price offered is identical to the true regular price of the merchandise and thus a misrepresentation. Furthermore, Plaintiffs identify and quote from documents and advertisements identifying sales at Jos. A. Bank throughout one calendar year. (Pls.' Opp. Br. 19-20; Am. Compl. ¶¶ 4, 28-30). Plaintiffs seek remedies for a nationwide class that purchased

merchandise from Jos. A. Bank during a more than six year class period, yet no allegations as to

misleading sales are made prior to August 5, 2011.  Plaintiffs have thus failed to allege sufficient

facts with particularity to demonstrate a plausible claim of any unlawful conduct by Defendant.

### 2.    Ascertainable Loss

This Court's inquiry into whether Plaintiffs' NJCFA claims are sustainable depends, in

part, on whether Plaintiffs have suffered an ascertainable loss.  Plaintiffs argue that their NJCFA

claims are sustainable based on the "benefit-of-the-bargain" theory, which allows for recovery of

the difference between price paid and the value of the property had the representations been true.

(Pls.' Opp. Br. 24) (citing McConkey v. AON Corp., 354 N.J. Supper. 25, 52 (App. Div. 2002)).

Plaintiffs have failed to adequately plead that they suffered an ascertainable loss.

Plaintiffs assert that, because the allegations of Jos. A. Bank's advertising practices span

an extended period of time, "Plaintiffs need not list each and every instance of such

misrepresentations."  (See Pls.' Opp. Br. 13) (citing Ticketmaster L.L.C. v. RMG Techs., No.

07-2534, 2007 WL 2989504, at *2 (C.D. Cal Oct. 12, 2009)).  Plaintiffs allege only that "the

ascertainable loss suffered by Plaintiffs is the difference between what the regular price actually

was and what the discount price should have been" yet have failed to provide this Court with

even a vague estimate of that figure or facts suggesting one exists.  (Pls.' Opp. Br. 23).

Otherwise fatal to Plaintiffs' claim is the failure of proof problem with the contention that

Plaintiffs "would have paid substantially less for the merchandise" had Jos. A. Bank suits *not*

been on sale every day.  (Pl.'s Opp. Br. 8).  In support of this argument, Plaintiffs rely only on

speculation of what future discovery will yield, i.e. that the regular price of Jos. A. Bank suits

was *never* the regular price indicated.  (Pl.'s Opp. Br. 14).  Without more, such allegations do

not satisfy the NJCFA's "ascertainable loss" requirement.  See Bowman v. RAM Medical, Inc.,

No. 10-cv-4403, 2012 WL 1964452, at *4 (D.N.J. May 31, 2012); <u>Hoffman v. Hampshire Labs, Inc.</u>, 405 N.J. Super. 105, 115 (App. Div. 2009).  Plaintiffs have not alleged that the product was defective nor that they did receive what they were promised.  Plaintiff Matthew Villani, for example, does not allege that he purchased two suits but did not receive seventy (70) percent off the price of the suits.  (<u>See</u> Am. Compl. at ¶ 10).  Nor do Plaintiffs allege that they were dissatisfied with the product, demanded a refund, or had their refund refused.  Plaintiffs' claimed monetary loss is thus purely hypothetical and speculative.  Therefore, the facts as alleged in the complaint do not constitute an "ascertainable loss" under N.J.S.A. 56:8-19.  <u>See Hoffman</u>, 405 N.J. Super. at 115.   Plaintiffs have thus failed to state a claim upon which relief can be granted under the NJCFA and Count I is dismissed.

**B.      Unjust Enrichment and Restitution Claims**

In Count II of the Amended Complaint, Plaintiffs allege unjust enrichment and seek restitution.  The Amended Complaint alleges that: (1) as a result of Jos. A. Bank's wrongful and deceptive conduct, Plaintiffs have suffered a detriment while Jos. A. Bank received a benefit, and (2) Jos. A. Bank's misleading, inaccurate and deceptive marketing cultivates the perception that consumer[s] are being offered a discount from the Company's regular prices when, in fact, they are not."  (Am. Compl.  ¶ ¶ 45-46).   Plaintiffs maintain that, had Jos. A. Bank not represented that items were "on sale,"  Plaintiffs would not have purchased Jos. A. Bank merchandise, or would have paid significantly less for it.

"To establish unjust enrichment, a plaintiff must show that defendant received a benefit and that retention of that benefit without payment would be unjust."  <u>VRG Corp. V. GKN Realty Corp.</u>, 641 A.2d 519, 526 (N.J. 1994) (internal citations omitted).  The doctrine of unjust

---

2As the first two required elements to successfully state a claim under claim under the NJCFA, the final element, a causal relationship between the unlawful conduct and the ascertainable loss, need not be discussed by this Court.

enrichment "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and the failure of remuneration enriched defendant beyond its contractual rights." Slack v. Suburban Propane Partners, L.P., No. 10-2548, 2010 WL 5392845, at * 9 (D.N.J. 2010) (citing VRG Corp., 641 A.2d at 526).

Although Plaintiffs are permitted to plead in the alternative, Plaintiffs' Complaint does not allege that Plaintiffs were made to pay a price other than the one advertised nor that the Defendants did not deliver the merchandise advertised and promised. (See Am. Compl. ¶¶ 9-11). Because Plaintiffs received the merchandise they paid for, Plaintiffs have failed to a state a claim for unjust enrichment that is plausible on its face. See Slack, 2010 WL 5392845, at *9 (dismissing an unjust enrichment claim "[b]ecause Plaintiffs received the propane they paid for"); see also In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., Civ. 08-939, 2009 WL 2940081 at *14 (D.N.J. Sept. 11, 2009) (finding "Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received" and dismissing the unjust enrichment claim). Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted for unjust enrichment and Count II of the Amended Complaint is dismissed.

### C. Plaintiffs' Standing to Seek Injunctive Relief and Damages

Plaintiffs seek "an injunction preventing Jos. A. Bank from using promotional material and advertising campaigns that are misleading and deceptive and that have the capacity to mislead consumers to believe they are being offered a discount from the Company's regular prices, when in fact, that are not." (Am. Compl. ¶ B). Plaintiffs also seek compensatory and treble damages. (Am. Comp. ¶¶ F, G). Jos. A. Bank asserts Plaintiffs do not have standing under Article III of the U.S. Constitution to obtain such relief. (Def.'s Br. 37). A plaintiff has standing when three elements are demonstrated:

> First, the plaintiff must have suffered an injury in fact-an invasion of
> a legally protected interest which is (a) concrete and particularized;
> (b) actual or imminent, not conjectural or 'hypothetical.  Second,
> there must be a causal connection between the injury and the
> conduct complained of-the injury has to be fairly ... trace[able] to the
> challenged action of the defendant, and not ... th[e] result [of] the
> independent action of some third party not before the court. Third, it
> must be likely, as opposed to merely speculative, that the injury will
> be "redressed by a favorable decision.

Lujan v. Defendants of Wildlife, 504 U.S. 555, 560 (1992) (internal quotations and citations

omitted).  "In the class action context, that requirement must be satisfied by at least one named

plaintiff."  McNair v. Synapse Group, Inc., 672 F.3d 213, 223 (3d Cir. 2012).

In order for a federal court to properly assert power over a case, a plaintiff must show he

has suffered an injury which will likely be redressed by a decision in his favor.  Brown v.

Fauver, 819 F.2d 395, 400 (3d Cir.1987). The type of relief sought is highly relevant in

determining whether a particular plaintiff has standing.  Id.  Thus, it is possible that a plaintiff

has standing to sue for damages but not for injunctive relief.  Id. (citing City of Los Angeles v.

Lyons, 461 U.S. 95 (1983); Ashcroft v. Mattis, 431 U.S. 171 (1977); Warth v. Seldin, 422 U.S.

490 (1975); O'Shea v. Littleton, 414 U.S. 488 (1974)).  Where a plaintiff has made a showing of

past injury sufficient to establish standing to sue for damages, he must also show "a real and

immediate threat that he would again" suffer the injury in order to obtain standing for

prospective relief.  Brown, 819 F.2d at 400 (quoting Lyons, 461 U.S. at 105).

Under any interpretation of the facts of this case, Plaintiffs have failed to establish a real

and immediate threat that they will suffer an injury as the result of any actions or policies of

Defendant.  Plaintiffs do not allege any intent or desire to purchase merchandise from

Defendants in the future.  The idea that Plaintiffs may subsequently be exposed to Defendant's

advertising techniques is an insufficient basis for standing.  See McNair v. Synapse Group, Inc.,

Case 2:12-cv-02060-DMC-JAD Document 21 Filed 01/28/13 Page 11 of 11 PageID: 582

672 F. 3d 213, 224 (3d Cir. 2012) (dismissing a claim for injunctive relief because "the wholly

conjectural future injury [the plaintiffs] rely on does not, and cannot, satisfy the constitutional

requirement that a plaintiff seeking injunctive relief must demonstrate a likelihood of future

harm").  Therefore, it is the finding of this Court that Plaintiffs have failed to show a real or

immediate threat, or even likelihood, that they will suffer future injury as a result of advertising

done by Jos. A. Bank.  Plaintiffs have similarly not provided any calculations for this Court to

evaluate demonstrating a mark-up of price or what the average "regular" price to be paid for the

merchandise in question was.  Cf. Smith v. Chrysler Financial Co., LLC, No. 00-CV-6003,

2004 WL 3201002, at *3 (D.N.J. Dec. 30, 2004) .  Thus, Plaintiffs have  not alleged Plaintiffs

are without standing to sue for injunctive relief or damages.

## IV.    CONCLUSION

Accordingly, we find that Plaintiffs have failed to adequately plead a claim upon which

relief can be granted and Defendant's Motion to Dismiss is **granted without prejudice**.


                                          S/ Dennis M. Cavanaugh
                                          Dennis M. Cavanaugh  U.S.D.J.

Date:        January  28 , 2013
cc:          All Counsel of Record
             Hon. J. A. Dickson, U.S.M.J.
             File